```
 1      IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

 2                           CENTRAL DIVISION

 3    _____

 4    UNITED STATES OF AMERICA,            CASE NO. 2:06-CR-726TC

 5            PLAINTIFF,                            2:09-CR-592TC

 6       VS.

 7    JEFFREY F. GEDDES,                   SALT LAKE CITY, UTAH

 8            DEFENDFANT.                  JANUARY 14, 2010

 9    _____

10                              SENTENCING
                    BEFORE THE HONORABLE TENA CAMPBELL
11                  UNITED STATES DISTRICT COURT JUDGE
      APPEARANCES:
12
      FOR THE PLAINTIFF:
13                          UNITED STATES ATTORNEY'S OFFICE
                            BY:  GREGORY C DIAMOND, ESQ.
14                               RICHARD W. DAYNES, ESQ.
                                 CY H. CASTLE, ESQ.
15                          185 SOUTH STATE STREET, SUITE 300
                            SALT LAKE CITY, UTAH 84111
16                          (801) 524-5682

17    FOR THE DEFENDANT:
                            UTAH FEDERAL DEFENDER OFFICE
18                          BY:  L. CLARK DONALDSON, ESQ.
                                 JAMIE ZENGER, ESQ.
19                          46 WEST 300 SOUTH, SUITE 110
                            SALT LAKE CITY, UTAH 84101
20                          (801) 524-4010

21                          BY:  RANDALL GAITHER, ESQ.
                            159 WEST 300 SOUTH, #105
22                          SALT LAKE CITY, UTAH 84101
                            (801) 531-1990
23
      COURT REPORTER:
24                          RAYMOND P. FENLON
                            350 SOUTH MAIN STREET, #242
25                          SALT LAKE CITY, UTAH 84101
                            (801) 809-4634
```

1

1              P-R-O-C-E-E-D-I-N-G-S

2                           JANUARY 14, 2010

3                           11:00 A.M.

4          THE COURT:  GOOD MORNING.  WE'RE HERE IN THE MATTER

5    OF THE UNITED STATES VERSUS JEFFREY GEDDES, HERE TODAY FOR

6    IMPOSITION OF SENTENCE IN BOTH 06-CR-00726 AND 09-CR-00592.

7    MR. GEDDES IS HERE WITH HIS ATTORNEYS ON THE EARLY CASE,

8    MR. DONALDSON AND MS. ZENGER, AND HIS ATTORNEY ON THE LATER

9    CASE, MR. GAITHER.  FOR THE UNITED STATES IS MR. CASTLE,

10   MR. DAYNES AND MR. DIAMOND.

11         FIRST OF ALL, VERY BRIEFLY, I WANT TO EXPLAIN WHY I DID

12   GRANT THE CONTINUANCE.  AND I RECOGNIZE THAT THE GOVERNMENT

13   STRONGLY OPPOSED THE CONTINUANCE, PRIMARILY BECAUSE THE VICTIM

14   IN THE EARLIER CASE HAD TRAVELED FROM SEATTLE I BELIEVE;

15   RIGHT?  AND IT WAS QUITE A HARDSHIP.

16         HOWEVER, GIVEN THE SUBSTANTIAL PENALTIES THAT MR. GEDDES

17   FACES, AND THE CLAIM BY MR. GAITHER, WHETHER AGREED TO BY THE

18   GOVERNMENT OR NOT, THAT HE NEEDED MORE TIME FOR REVIEW OF THE

19   MATERIALS AND TO SUBMIT ANOTHER MEMORANDUM, I BELIEVED IT

20   NECESSARY TO CONTINUE.  FIRST OF ALL, I WANTED TO GIVE COUNSEL

21   FULL OPPORTUNITY TO BRIEF ISSUES, AND HE HAS NOW, AND I'VE

22   READ THE MATERIAL, AND I ALSO WANTED TO MAKE SURE THAT WE

23   DIDN'T HAVE AN ISSUE ON APPEAL.  AND FOR THAT REASON I GRANTED

24   THE CONTINUANCE.

25         I HAVE NOW READ ALL OF THE MATERIALS, AND IT'S QUITE

1    VOLUMINOUS, AND I AM PREPARED TO GO FORWARD.

2         MR. DONALDSON, LET'S TALK ABOUT THE PRESENTENCE REPORT,

3    WHICH NOW THERE IS A SUPPLEMENTAL REPORT.

4         YES, MR. GAITHER.

5              MR. GAITHER:  YES, YOUR HONOR.  I HAVE A PRELIMINARY

6    MOTION, IF I COULD ADDRESS THE COURT, PLEASE.

7              THE COURT:  SURE.

8              MR. GAITHER:  ALL RIGHT, THANK YOU.  FIRST OF ALL, I

9    APPRECIATE THE OPPORTUNITY.  THERE WAS -- AND I DID A LOT OF

10   WORK IN THE LAST WEEK ON THE CASE.

11             THE COURT:  I KNOW YOU DID.

12             MR. GAITHER:  IN THAT REGARD, YOUR HONOR, I WOULD --

13   I HAVE A SUBMISSION THAT I RECEIVED FROM AN ATTORNEY IN NEW

14   YORK, AND I RECEIVED THAT AT 9:00 O'CLOCK TODAY.  AND I'VE

15   GIVEN A COPY TO THE GOVERNMENT AND A COPY TO MR. DONALDSON.

16   IF I COULD HAND A COPY TO THE CLERK OF THE COURT.

17             THE COURT:  YOU'RE ASKING TO CONTINUE IT AGAIN?

18             MR. GAITHER:  YES.

19             THE COURT:  OH, HE'S WITH FRANK.

20             MR. GAITHER:  AND HE IS -- HE MAY BE FAMILIAR TO THE

21   COURT.

22             THE COURT:  YEAH.  IS HE OUT OF JAIL NOW?

23             MR. GAITHER:  HE'S OUT OF JAIL.  AND AS I DISCLOSED

24   TO THE GOVERNMENT, MR. GEDDES DID MEET HIM WHEN HE WAS IN

25   JAIL.  AND AFTERWARDS -- THE COURT'S AWARE THAT THERE WAS AN

1   AGREEMENT TO ATTEMPT TO RAISE A MILLION DOLLARS TO EXTEND THE

2   SENTENCING FOR SIX MONTHS.  AND I WAS NOT REALLY A PART OF

3   THAT -- OF THAT SITUATION AND THAT ASPECT, BUT I HAD CONTACTED

4   OTHER PERSONS OTHER THAN MR. FRANK SAYING, YOU KNOW, WE WOULD

5   AT LEAST LIKE A LETTER SAYING THAT THERE HAD BEEN SUCH AN

6   EFFORT SO THAT, YOU KNOW, IT WOULD SHOW THAT THERE WAS SUCH AN

7   EFFORT AND THAT'S GOING UNDERWAY.

8           THE COURT:  TO RAISE THE MILLION?

9           MR. GAITHER:  TO RAISE THE MILLION.  AND AS OF

10  LAST -- AND I DIDN'T CALL -- AND SO I MADE A CALL THREE OR

11  FOUR DAYS AGO TO ANOTHER PERSON WHO RELAYED THE INFORMATION TO

12  MR. FRANK.  THEN I GOT A CALL BACK LAST NIGHT LATE SAYING,

13  WELL, THERE MAY BE AN OPPORTUNITY TO RAISE THE MILLION.  AND I

14  SAID, "LISTEN, YOU'VE GOT TO PUT SOMETHING IN WRITING.  I'LL

15  SUBMIT IT TO THE COURT."

16          THE COURT:  SURE.

17          MR. GAITHER:  NOW, IN TALKING -- I WANTED TO SAY

18  THAT THIS WAS MR. GEDDES' IDEA WHEN I FINALLY GOT THIS AND

19  SHOWED IT TO HIM ABOUT AN HOUR AGO.  AND HE SAID IF THERE'S

20  ANY WAY, THAT HE DOES NOT OBJECT TO THE COURT GOING AHEAD AND

21  HEARING ALL THE SUBMISSIONS TODAY AND CONTINUING THE

22  PRONOUNCEMENT OF SENTENCE FOR TWO WEEKS TO SEE IF THE MILLION

23  DOLLARS TO COME -- TO CONTINUE THE PRONOUNCEMENT FOR ANOTHER

24  SIX MONTHS TO ATTEMPT TO RAISE MORE IN RESTITUTION.

25          THE COURT:  OKAY.  LET ME TELL YOU THIS.  I'M GOING

1    TO DENY THAT.  AND I DO THAT FOR A COUPLE OF REASONS.  ONE,

2    THIS CASE HAS BEEN CONTINUED BEFORE, AND I BELIEVE WE MUST

3    HAVE SOME SORT OF CLOSURE.

4        ALSO, IF IN FACT MONEY IS RAISED, THERE ALWAYS REMAINS A

5    POSSIBILITY, WHETHER IT WOULD BE FOLLOWED AND WHETHER IF

6    FOLLOWED IT WOULD BE GRANTED, FOR A MOTION TO REDUCE SENTENCE.

7    SO I'M GOING TO GO AHEAD.  AND IF ANYTHING COMES UP AND YOU

8    BELIEVE THAT -- AND COUNSEL BELIEVES THAT SOME SORT OF

9    ADDITIONAL HEARING SHOULD BE GRANTED POST SENTENCING, PLEASE

10   FILE A MOTION, AND AS YOU KNOW, I'M ALWAYS AVAILABLE FOR

11   MOTIONS.

12              MR. GAITHER:  THANK YOU, YOUR HONOR.

13              THE COURT:  SO THE MOTION TO CONTINUE IS DENIED.

14   THIS WILL BE HERE.  OKAY.  THEN THE SUPPLEMENTAL GUIDELINE --

15   SUPPLEMENTAL PRESENTENCE REPORT, IN ADDITION TO THE INITIAL

16   REPORT, MR. DONALDSON, MS. ZENGER, HAVE YOU HAD ENOUGH TIME TO

17   GO OVER IT?

18              MR. DONALDSON:  YES, YOUR HONOR.

19              THE COURT:  AND AS I UNDERSTAND IT, YOU HAD TWO

20   OBJECTIONS.  ONE WAS THE PARAGRAPHS 28 AND 29 OF THE FIRST

21   REPORT, AND THEN YOU ALSO FELT THAT THERE SHOULD BE THE

22   3553 FACTORS LISTED.  THOSE CORRECTIONS HAVE NOW BEEN MADE.

23   WITH THOSE CORRECTIONS, MR. DONALDSON AND MS. ZENGER, DO YOU

24   BELIEVE THAT THE REPORTS ARE CORRECT?

25              MR. DONALDSON:  YES, YOUR HONOR.

1          THE COURT:  OKAY.  SAME QUESTIONS FOR YOU,

2    MR. GAITHER.

3          MR. GAITHER:  YES, YOUR HONOR.

4          THE COURT:  OKAY.  SAME QUESTIONS FOR YOU, UNITED

5    STATES.

6          MR. DIAMOND:  YES, YOUR HONOR.

7          THE COURT:  THEN -- AND IT'S SORT OF A COMPLICATED

8    GUIDELINE SCENARIO BECAUSE THERE'S THE ENHANCEMENT FOR

9    OBSTRUCTION, ETCETERA.  BUT THE GUIDELINES, WITH THE TOTAL

10   OFFENSE LEVEL OF 30, AND A CRIMINAL HISTORY CATEGORY NOW OF

11   5 -- AND I THANK YOU FOR CATCHING THAT.  MS. WHITE, WHO

12   PREPARED THIS, IS THE EXPERT ON THIS.  AND IF YOU CAN FIND

13   SOMETHING WHERE MS. WHITE HASN'T SEEN SOMETHING, THAT NEVER

14   HAPPENS, MY HATS OFF TO YOU -- IS 151 TO 188 MONTHS, VERY

15   ADVISORY.

16      DO YOU AGREE, UNITED STATES?

17         MR. DIAMOND:  YES, YOUR HONOR.

18         THE COURT:  DO YOU AGREE, MR. DONALDSON, MS. ZENGER?

19         MR. DONALDSON:  YES, YOUR HONOR.

20         THE COURT:  AND YOU, MR. GAITHER, AS WELL?

21         MR. GAITHER:  THAT'S THE POINT TOTAL, YOUR HONOR,

22   YES.

23         THE COURT:  OKAY.  THERE WE GO.  WITH THAT, THEN

24   LET'S HEAR ABOUT WHAT'S REASONABLE IN YOUR VIEW.  I SUPPOSE

25   YOU HAVE IT BROKEN UP, AND I DON'T KNOW, MR. DONALDSON AND

1    MS. ZENGER, YOUR REMARKS, MR. GAITHER'S REMARKS.

2        ANYTHING YOU WANT TO TELL ME, MR. GEDDES, I'LL HEAR, BUT

3    YOU DON'T HAVE TO.  YOU HAVE PEOPLE ADVOCATING FOR YOU AND

4    VERY COMPETENTLY, BUT I SURE WOULD LISTEN TO YOU, AND THEN THE

5    GOVERNMENT.

6        IS THAT HOW, DEFENSE, YOU PLAN TO PROCEED?

7            MR. DONALDSON:  YES.

8            THE COURT:  GOVERNMENT?

9            MR. DIAMOND:  YES, YOUR HONOR.

10           THE COURT:  OKAY.  GO AHEAD THERE, MR. DONALDSON,

11   PLEASE.

12           MR. DONALDSON:  I KNOW THIS CASE HAS BEEN ON YOUR

13   DOCKET FOR QUITE A WHILE, ALTHOUGH ORIGINALLY IT WAS ASSIGNED

14   TO JUDGE CASSELL.

15           THE COURT:  THAT TELLS YOU HOW LONG AGO IT IS.

16           MR. DONALDSON:  I'LL JUST -- I'LL JUST TOUCH ON WHAT

17   I THINK IS SOME OF THE MITIGATION, AND ALSO TALK ABOUT SOME OF

18   THE AGGRAVATION UNDER 3553(A) JUST BRIEFLY.

19           THE COURT:  AND I WANT -- BEFORE YOU START IT, I

20   WANTED TO SAY SOMETHING TO YOU AND MS. ZENGER.  I APPRECIATE

21   THE FACT THAT DURING THIS SORT OF LONG HISTORY OF THE CASE,

22   BEFORE THINGS REALLY KIND OF WERE RESOLVED -- I'M TALKING

23   ABOUT, YOU KNOW, MOTIONS TO SUPPRESS, ETCETERA -- THAT I

24   COMMEND YOU ON THE VERY FINE JOB YOU'VE DONE.  SO GO AHEAD

25   THERE, PLEASE.

1    MR. DONALDSON:  AS THE COURT KNOWS, MR. GEDDES HAS

2    PLED TO EVERY SINGLE COUNT IN THE SUPERSEDING INDICTMENT.

3    THE COURT:  YES.

4    MR. DONALDSON:  AND IN WHAT -- OTHER THAN A FEW

5    CAPITAL CASES THAT I HAVE WORKED ON, THAT WAS ABOUT THE MOST

6    DETAILED COLLOQUY THAT I HAVE SEEN TAKEN ON A CRIMINAL CASE.

7    SO YOU KNOW ALL THAT.

8    AND I BELIEVE YOU HAVE -- YOU CERTAINLY HAVE REVIEWED THE

9    LETTER THAT MR. GEDDES HAS SUBMITTED.  NOW, IT'S PRINCIPALLY

10   ABOUT THE PRETRIAL VIOLATION CASE, BUT IT ALSO TOUCHES ON

11   THIS.  AND I THINK THERE ISN'T ANY QUESTION, AT LEAST IN MY

12   MIND, THAT HE HAS CONTINUED TO ADMIT RESPONSIBILITY SINCE HIS

13   OCTOBER PLEA.

14   THE COURT:  AND I AGREE WITH YOU.

15   MR. DONALDSON:  OKAY.  IN MAY -- AS YOU LOOK AT THE

16   OFFENSE CONDUCT, OF COURSE IT RANGED FROM AS INDICTED AUGUST

17   OF 2002 THROUGH I THINK MAY 5TH OR SO OF 2005.  AT THE TIME

18   THE SEARCH WARRANT WAS EXECUTED ON THE ADAGIO SUITE OF

19   BUSINESSES, MR. GEDDES, ALL OF HIS -- ALL THE ASSETS WERE

20   FROZEN OF ADAGIO, OF HIMSELF, AND ALL SORTS OF RELATED

21   ENTITIES.  SUBSEQUENTLY IN MAY AND JUNE OF 2005 HE EXECUTED

22   A -- OR HE ENTERED INTO A JUDGMENT OF CONFESSION.

23   THE COURT:  AND I HAVE THAT.

24   MR. DONALDSON:  RIGHT.  AND THOSE LIMITED POWERS OF

25   ATTORNEY, WHICH ESSENTIALLY ALLOWED ZIONS TO LIQUIDATE

```
 1    EVERYTHING.  AND, OF COURSE, MUCH OF WHAT HE HAD HE HAD
 2    WRONGFULLY.  WE CONCEDE THAT.  AND EVEN AS RECENTLY AS TODAY,
 3    OF COURSE, THE MONEY THAT WAS TAKEN FROM HIS PERSON, OR MAYBE
 4    IT WAS HIS HOTEL ROOM IN SAN DIEGO, THE $4,001, THE COURT
 5    SIGNED A PRELIMINARY ORDER OF FORFEITURE ON THAT.  I GUESS MY
 6    POINT IS THAT ALTHOUGH THERE'S CERTAINLY BEEN A BIT OF HISTORY
 7    IN BETWEEN THOSE -- THAT TIME PERIOD AND TODAY, YOU KNOW,
 8    ABSENT HIS PRETRIAL VIOLATION WHERE HE LEFT THE JURISDICTION,
 9    AND MR. GAITHER WILL DISCUSS THAT, HE DID DO THINGS TO TRY TO
10    MITIGATE THE HARM EARLY ON.  AND I THINK THAT THAT'S IMPORTANT
11    FOR YOU TO KNOW ABOUT THE OFFENSE.
12         AND OF COURSE THE NATURE OF THIS OFFENSE OR THESE
13    OFFENSES ARE NOT VIOLENT.  AND MR. GEDDES IS GOING TO OWE OVER
14    $7,000,000 WORTH OF RESTITUTION, ESSENTIALLY NOT JUST WHILE
15    HE'S ON SUPERVISED RELEASE, BUT THE FINANCIAL LITIGATION I'M
16    CONFIDENT THE U.S. ATTORNEY'S OFFICE WILL CONTINUE TO REMIND
17    HIM ABOUT THAT AND MAKE SURE THAT THAT'S COLLECTED ESSENTIALLY
18    FOR THE REST OF HIS LIFE.  AND I THINK THAT THAT'S SOMETHING
19    FOR THE COURT TO CONSIDER.
20         IN TERMS OF HIS PERSONAL BACKGROUND AND CHARACTERISTICS,
21    YOU KNOW ABOUT HIS CRIMINAL RECORD IN DETAIL.  THAT'S IN THE
22    PRESENTENCE REPORT.  AS A MAN WHO IS NOW -- WELL, IN MARCH
23    HE'LL BE 41.  I THINK THERE ARE SOME THINGS ABOUT MR. GEDDES
24    THAT THE COURT OUGHT TO CONSIDER THAT ARE SOMEWHAT MITIGATING.
25    HE'S THE FATHER OF TWO YOUNG CHILDREN, ADOLESCENT CHILDREN.
```

1    AND OBVIOUSLY, ALTHOUGH HE AND HIS WIFE ARE GETTING A DIVORCE,

2    AND I THINK THERE'S ACRIMONY THERE, SHE TOLD ME ON THE PHONE,

3    AND I THINK A COUPLE OF TIMES IT'S CONCEDED, THAT HE HAS BEEN

4    A GOOD FATHER, THAT HE LOVES HIS TWO CHILDREN, THAT HE WAS

5    ATTENTIVE, THAT HE SPENT TIME WITH THEM, THAT HE WAS VERY

6    RESPONSIBLE.  AND, YOU KNOW, THAT'S AT LEAST SOMETHING FOR THE

7    COURT TO WEIGH BECAUSE --

8             THE COURT:  AND THAT'S AN IMPORTANT FACTOR,

9    MR. DONALDSON, I AGREE.

10            MR. DONALDSON:  IN TERMS OF THE POLICIES BEHIND

11   THE -- OH, THE OTHER THING I WANTED TO SAY ON THE OFFENSES IS

12   YOU KNOW THE RANGE OF TIME.  AND ESSENTIALLY THE COURT HAS

13   BEFORE IT TWO VICTIMS.  PEOPLE SHOULDN'T BE VICTIMIZED.  THEY

14   SHOULDN'T HAVE THEIR FUNDS TAKEN BY FRAUD OR IN ANY OTHER

15   FASHION.

16            THE COURT:  TWO VICTIMS, YOU MEAN ZIONS AND B.H.?

17            MR. DONALDSON:  ZIONS AND B.H.

18            THE COURT:  RIGHT.

19            MR. DONALDSON:  ZIONS BEING SORT OF AN INSTITUTIONAL

20   VICTIM, AND B.H. BEING A BUSINESS PARTNER.

21            THE COURT:  SURE.

22            MR. DONALDSON:  AT LEAST ON THIS MATTER.  IN TERMS

23   OF THE POLICIES BEHIND 3553(A), UNDER (A)(2) WE'D CONCEDE THAT

24   THE 56 COUNTS HERE ARE SERIOUS.  THE LOSS IS SUBSTANTIAL.  ONE

25   OF THE HARD THINGS I THINK THAT A COURT HAS TO DO, AND I

1    REALLY MEAN THIS CANDIDLY, IS TO TRY TO IMPOSE A SENTENCE THAT

2    IS JUST, TEMPER WHAT SOMETIMES MIGHT BE THE VISCERAL REACTION

3    THAT YOU WOULD HAVE.  AND I CAN UNDERSTAND HOW A VISCERAL

4    REACTION ON THIS CASE COULD BE STRONG.

5         THE COURT:  WELL, I THINK I'VE BEEN IN THIS BUSINESS

6    A LONG TIME.  I'M SORT OF --

7         MR. DONALDSON:  YOU'VE BEEN DOWN THAT ROAD.

8         THE COURT:  -- ABLE TO TEMPER ANY VISCERAL REACTION,

9    AND I MUST SAY I DON'T HAVE ANY IN THIS ONE.

10        MR. DONALDSON:  GOOD.  OKAY.  OKAY.  BUT IN TERMS OF

11   GENERAL DETERRENCE AND SPECIFIC DETERRENCE IN THIS CASE,

12   MR. GEDDES IS SOMEONE WHO -- AS A PERSON WHO IS IN HIS 40'S

13   NOW.  AS WE POINTED OUT, WE'VE REFERENCED THAT 2004 SENTENCING

14   COMMISSION STUDY.  AND THIS IS NOTHING TOO DRAMATIC.  I

15   BELIEVE THERE ARE A LOT OF OTHER STUDIES PREVIOUSLY THAT WOULD

16   HAVE SUPPORTED THIS, AND THAT IS THAT AS A PERSON AGES,

17   THEY'RE LESS OF A RISK OF RECIDIVISM, PARTICULARLY AS A PERSON

18   HITS THE AGE OF 50.

19        THE COURT:  YOU KNOW WHAT I DIDN'T UNDERSTAND

20   THOUGH?  DOES THAT APPLY PRIMARILY TO CRIMES WITH SOME ELEMENT

21   OF VIOLENCE OR THE WHITE COLLAR AREA?

22        MR. DONALDSON:  I THINK -- AND, YOU KNOW, I WOULD

23   HAVE TO GO BACK AND CHECK THIS FOR SURE, BUT I BELIEVE IT IS

24   ANY CRIME.  I BELIEVE THEY PUT EVERYTHING IN AND DIDN'T DIVIDE

25   IT UP BY THE TYPE OF CRIME.  AND IF YOU'D LIKE, I CAN

1    DOUBLE-CHECK THAT.

2            THE COURT:  NO.  IT DOESN'T MATTER.  I JUST

3    WONDERED.  IT SEEMED TO ME THAT I WOULD CERTAINLY AGREE WITH

4    THAT WITH CRIMES OF VIOLENCE, BUT I DON'T KNOW IN THE WHITE

5    COLLAR AREA.  I DON'T KNOW THAT IT'S AS CLEARLY DEFINED.  BUT

6    I RECOGNIZE THE AUTHORITY THAT YOU'RE CITING.

7            MR. DONALDSON:  OKAY.  AND ALSO I CITED THE ADELMAN

8    CASE, WHICH IS A -- IT'S A FEDERAL SUPPLEMENT CASE PUBLISHED

9    OUT OF I BELIEVE THE DISTRICT OF NEW YORK.  AND THE JUDGE

10   THERE MADE THE OBSERVATION, IN I THINK WHAT WAS A VERY LARGE

11   SECURITIES FRAUD SITUATION WHERE THE GUIDELINE FOR THE

12   DEFENDANT THERE WAS ESSENTIALLY LIFE, AND GAVE A PRETTY

13   DRAMATIC REDUCTION, BUT INDICATED THAT BECAUSE RESTITUTION IN

14   MR. ADELMAN'S SITUATION WAS GOING TO BE A LIFELONG ISSUE, THAT

15   WAS SOMETHING THAT WAS APPROPRIATE FOR THE COURT TO CONSIDER

16   IN TERMS OF DETERRENCE.

17       ANY PRISON TERM HERE -- AND I KNOW YOU'RE GOING TO COMMIT

18   MR. GEDDES TO THE BUREAU OF PRISONS CUSTODY.  THERE'S JUST NO

19   QUESTION ABOUT THAT.

20           THE COURT:  CORRECT.

21           MR. DONALDSON:  WOULD DETER A RATIONAL PERSON.  ANY

22   KIND OF PRISON TERM WITH THE CONSEQUENCE WE'VE SEEN HERE, THE

23   LOSS OF FAMILY -- AND I SUPPOSE YOU COULD SAY ON THE ONE HAND

24   MR. GEDDES HAS SORT OF LOST FRIENDS.  HE'S LOST WHATEVER FACE

25   HE HAD IN THE COMMUNITY.  AND ALL OF THOSE THINGS WEIGH

1   AGAINST -- OR WEIGH IN FAVOR OF DETERRING FUTURE CONDUCT.

2        IN TERMS OF REHABILITATION, MR. GEDDES IS MORE THAN HAPPY

3   TO PARTICIPATE IN ANY PROGRAMMING OFFERED THROUGH THE BUREAU

4   OF PRISONS, BUT SPECIFICALLY HE WOULD ASK THE COURT TO

5   RECOMMEND THAT HE BE COMMITTED TO EITHER TERMINAL ISLAND -- IN

6   THIS ORDER -- SAFFORD, ARIZONA, OR SHERIDAN, OREGON.  AND THAT

7   IS BECAUSE HE HAS -- TO HELP HIM MAINTAIN OR ACQUIRE FURTHER

8   COMPUTER SKILLS.  YOU'VE SEEN THE LETTERS FROM --

9             THE COURT:  RIGHT.

10            MR. DONALDSON:  -- DR. TRUSCOTT AND THE OTHER

11   GENTLEMAN, AND BOTH REFERENCE THAT.  IN TERMS OF GUIDELINE

12   POLICIES, I THINK MR. GAITHER SPOKE ABOUT THOSE A LITTLE BIT

13   FROM THE KIMBRO ANGLE, AND THAT IS THAT SOMETIMES THERE'S A

14   COMPOUNDING OF THE SPECIFIC OFFENSE CHARACTERISTICS THAT SORT

15   OF ADD UP, AND THEY HAVE HERE.

16        AS TO CONCERNS UNDER (A)(6) OF THE STATUTE AND (A)(7),

17   DISPARITY AND RESTITUTION, I'M GOING TO DISCUSS THOSE

18   TOGETHER, AND THAT IS THE SOONER MR. GEDDES IS RELEASED FROM

19   PRISON, THE SOONER HE CAN BEGIN PAYING RESTITUTION.  THE

20   LONGER HE'S IN PRISON, THE MORE ATROPHY HIS -- ANY KIND OF

21   EMPLOYMENT SKILLS OR ANY JOB SKILLS, PARTICULARLY COMPUTER

22   SOFTWARE, WILL PROBABLY BE REDUCED.

23        WE WOULD ASK THE COURT IN THIS SITUATION TO CONSIDER

24   IMPOSING A SENTENCE AS LENIENTLY AS POSSIBLE, AND I THINK

25   THAT'S THE STATUTORY COMMAND, SUFFICIENT --

1           THE COURT:  SAY THAT --

2           MR. DONALDSON:  I THINK THAT'S THE STATUTORY COMMAND

3    UNDER THE PARSIMONY PROVISION OF 3553(A).

4        THE ONLY OTHER THING THAT I WOULD -- WANTED TO ADDRESS,

5    THERE'S A REFERENCE IN THE GOVERNMENT'S -- I THINK IT WAS

6    THEIR POSITION PAPER, BUT ESSENTIALLY IT WAS A REPLY TO THE

7    POSITION PAPER THAT I FILED AND THE ONE MR. GAITHER FILED.

8    AND I MAY NOT KNOW FOR SURE WHAT THEY WERE SAYING IN THIS

9    REGARD, BUT THEY MAKE A REFERENCE TO THE AFFECT TO THE BANK,

10   THAT SOMEHOW --

11          THE COURT:  THAT IT MIGHT HAVE CAUSED ITS UNSTABLE

12   POSITION?

13          MR. DONALDSON:  YEAH.  AND FRANKLY WE DID JUST A

14   LITTLE BIT OF CHECKING.  AND I KNOW LAST YEAR MARKETWATCH,

15   WHICH IS A FINANCIAL PUBLICATION THAT LOOKS AT FINANCIAL

16   INSTITUTIONS AND BUSINESS GENERALLY, RECORDED THAT MOODY'S,

17   YOU KNOW, CLASSIFIES BANKS AND OTHER LENDING INSTITUTIONS,

18   THEIR POSITION SAID THAT ZIONS BANK HAD SUFFERED A LITTLE BIT

19   OF A DOWNTURN, AS HAVE MANY REGIONAL BANKING CHAINS, BUT THAT

20   THAT WAS ATTRIBUTABLE TO THEIR LENDING HEAVILY IN THE

21   COMMERCIAL REAL ESTATE AREA AND SOME OTHER MARKET FACTORS.

22       I DON'T THINK -- I'M NOT TRYING TO MINIMIZE WHAT

23   MR. GEDDES DID, BUT I DON'T THINK THERE'S REALLY AN IMPACT TO

24   THE BANK IN TERMS OF THEIR BONDING OR WHATEVER.

25          THE COURT:  RIGHT.  AND ACTUALLY NOW THAT THEY DID

1   LIQUIDATE EVERYTHING, THEIR RESTITUTION AMOUNT IS JUST A

2   LITTLE OVER 35,000.  WHAT I WOULD SAY ABOUT THE BANK IS -- AND

3   I'M NO BANKER.  I'M NO FINANCIAL -- I WAS FAIRLY, FROM THE

4   BEGINNING OF THIS CASE, PUZZLED BY THE FACT THAT ZIONS WAS

5   WILLING TO BECOME SO DEEPLY INVOLVED WITH MR. GEDDES IN FACE

6   OF THE FACT THAT HE DID HAVE QUITE AN OUTSTANDING RECORD,

7   WHICH A VERY MINIMAL SEARCH WOULD HAVE SHOWN A HISTORY OF

8   FRAUD.  SO THAT HAS ALWAYS BEEN A PUZZLEMENT TO ME, BUT THERE

9   YOU GO.

10          MR. DONALDSON:  I UNDERSTAND.  UNLESS THE COURT HAS

11   ANY QUESTIONS --

12          THE COURT:  I DON'T.  MR. DONALDSON, AGAIN YOU AND

13   MS. ZENGER HAVE DONE A VERY THOROUGH JOB.

14      MR. GAITHER, SIR.

15          MR. GAITHER:  THANK YOU, YOUR HONOR.  I KNOW

16   MR. GEDDES HAS A LIST THERE AND HE WANTS TO SPEAK TO THE

17   COURT, SO I'LL BE BRIEF.

18          THE COURT:  AND I'M GOING TO LET HIM SPEAK LAST.  TO

19   ME THAT'S ALWAYS THE MOST -- IF THE DEFENDANT WISHES TO SAY

20   SOMETHING, THAT'S SOMETHING THAT I WANT TO CONSIDER THE MOST

21   FULLY.

22          MR. GAITHER:  ONE OF THE THINGS I WANTED TO -- JUST

23   TO BRING UP IN RESPONSE TO THE GOVERNMENT'S POSITION AND

24   THAT I LET IT -- THEY ATTACHED A BUNCH OF PICTURES OF CARS TO

25   THE MEMORANDUM.

1          THE COURT:  YEAH.  AND, FRANKLY, I DIDN'T NEED ANY

2     OF THAT, AND IT WASN'T ONE WAY OR THE OTHER -- AND I KNOW

3     LATER THEY SAID IT WAS JUST ILLUSTRATIVE.  SO IT HAD NO

4     AFFECT.

5          MR. GAITHER:  BUT I WANT TO JUST KIND OF -- AND WHAT

6     I WORKED ON IN THE LAST WEEK AFTER RECEIVING THOSE PICTURES IS

7     TO KIND OF BRING IN THE REST OF THE STORY, AND THE REST OF THE

8     STORY IS ACTUALLY IN THE DISCOVERY, AND IT'S IN A FEW LINES OF

9     THE REPORT.

10         BUT MR. GEDDES, BEFORE HE MET B.H., WAS WORKING IN THE

11    INTERNET -- INTERNET BUSINESS IN DEVELOPING SOFTWARE WHERE YOU

12    COULD BUY AND SELL CARS OVER THE INTERNET.  AND THAT LED HIM

13    TO BE FAMILIAR WITH CARS AND PRICES OF CARS.  AND THAT'S WHY I

14    OBTAINED THE LETTER FROM AN ACQUAINTANCE WHO WAS AWARE OF

15    THAT.

16         SO I THINK THAT TELLS THE REST OF THE STORY.  AND I THINK

17    THE POINT THAT I'D LIKE TO MAKE, IN DETERMINING

18    REASONABLENESS, YOU CAN LOOK AT PICTURES OF CARS, AND THEN YOU

19    CAN LOOK AT AMOUNTS OF MONEY AND GET A LITTLE BIT TOO

20    MATHEMATICAL AND TOO STRUCTURED.  AND I KNOW THE COURT IS

21    GOING TO CONSIDER THAT.

22         SO THAT'S WHAT WE'RE ASKING IS MORE LOOKING AT THE

23    BALANCING.  AND PART OF THAT BALANCING I THINK SHOULD LOOK TO

24    THE FUTURE.  MR. GEDDES ADMITS HE MADE -- HE MADE A MISTAKE IN

25    THIS ZIONS SITUATION.  AND AS THE COURT INDICATED, THERE WAS

1    LOTS AND LOTS OF MONEY COMING, AND IT WAS COMING AWFUL FAST.

2    AND HE -- HE -- I THINK ONE OF THE POINTS HE'S GOING TO MAKE

3    TO THE COURT, AND I THINK THAT THAT WAS WHY WE SUPPORTED THAT

4    WITH LETTERS FROM FRIENDS AND ACQUAINTANCES, HE'S VERY GOOD.

5    HE'S GOT EXTRAORDINARY SKILLS IN TECHNOLOGY, COMPUTERS.  AS

6    FAR AS THE CASE WHERE HE LEFT --

7              THE COURT:  HE'S VERY SMART.  MR. GEDDES IS VERY,

8    VERY SMART AND TALENTED.  THERE'S NO QUESTION ABOUT THAT.

9              MR. GAITHER:  AND WHAT WE'RE ASKING IS THAT HE BE

10   ABLE TO DIRECT THAT TO PAY RESTITUTION.  THE POINT THAT I WAS

11   ATTEMPTING TO MAKE, AND I THINK THAT WOULD ASK -- I THINK THE

12   BIGGEST REASONABLE FACTOR THAT WILL BALANCE THIS FARTHER AWAY

13   FROM INCARCERATION IS THE POINT THAT IF HE'S ABLE TO PAY

14   RESTITUTION AND CAN USE THESE -- HIS COMPUTER SKILLS, HE'LL BE

15   ABLE TO PAY MORE RESTITUTION THAN NORMAL.  SOME PEOPLE DON'T

16   EVEN ATTEMPT TO MAKE AN ATTEMPT.  HE WILL MAKE AN ATTEMPT, AND

17   THERE WILL BE RESTITUTION PAID IN THIS CASE.  AND THE QUESTION

18   IS WHY NOT LET HIM START MAKING IT A LITTLE SOONER.

19        THE LAST POINT I WOULD LIKE TO MAKE CONCERNS THESE

20   GUIDELINE SITUATIONS.  AND I THINK THERE'S TWO THINGS THERE.

21   ONE ON THE GROSS AMOUNT OF 7,000,000 TO 20,000,000, IT'S A

22   LITTLE -- I GOT A LITTLE CARRIED AWAY THERE MAYBE, BUT IT DOES

23   TALK ABOUT THE BRACKET.  HE'S ONLY ONE PERCENT UP INTO THAT

24   BRACKET.

25             AND THEN YOU LOOK INTO THESE -- THE GUIDELINES ABOUT IT

```
 1    BEING A FINANCIAL INSTITUTION AND SOPHISTICATED MEANS.  AND AS
 2    I READ THE CASES, I THINK THERE'S -- THE WAY THE SUPREME
 3    COURT'S KIND OF INDICATED, EACH ONE OF THOSE, YOU CAN'T TAKE
 4    ANY REASONABLE PRESUMPTION.  YOU JUST CAN'T POP ON TWO POINTS.
 5    YOU'VE GOT TO LOOK AT EACH ONE OF THOSE REASONABLE SITUATIONS.
 6         AND I THINK IT'S A VERY FAIR AND APPROPRIATE ARGUMENT TO
 7    SAY IF YOU'RE GOING TO DO -- IF YOU'RE GOING TO DO THE --
 8    PROBABLY HE DOES HAVE IT FOR NOT APPEARING AT SENTENCING.
 9    THERE'S A TWO POINT INCREASE THERE.  BUT THESE OTHER ONES, IF
10    YOU LOOK AT THE GROSS AMOUNT AND EACH INDIVIDUAL ONE, THEY
11    SHOULD PROBABLY BE BALANCED OFF AND NOT BE -- NOT RESULT IN
12    SUCH A HIGH NUMERICAL FACTOR WHEN THE COURT CONSIDERS THE
13    REASONABLENESS.  AND SO THAT'S THE ARGUMENT WE'RE MAKING HERE
14    TODAY.  THANK YOU, YOUR HONOR.
15         THE COURT:  AND, MR. GAITHER, YOU TOO --
16    MR. GEDDES, ONE THING THAT STRUCK ME THROUGHOUT THIS CASE
17    IS YOU'VE HAD THE BENEFIT OF VERY FINE ATTORNEYS, AND THAT
18    CONTINUES.
19         UNITED STATES, ANYTHING YOU WANT TO SAY?
20         MR. DIAMOND:  YES, YOUR HONOR.  THERE HAVE BEEN A
21    SUBSTANTIAL NUMBER OF ISSUES RAISED EITHER DIRECTLY OR
22    PERIPHERALLY THROUGH THE PLEADINGS AND THROUGH THE ARGUMENTS.
23    I DON'T INTEND TO REITERATE EVERYTHING, BUT I THINK THERE IS
24    SOME RESPONSE THAT IS REQUIRED.
25         FIRST IS THE CONCEPT OF MR. GEDDES' ATTEMPT TO REDUCE THE
```

1    HARM.  KEEP IN MIND THAT ALL OF HIS EFFORTS CAME ABOUT BECAUSE

2    THE PROCEEDS OF HIS ACTIVITIES HAD BEEN SEIZED.  THEY WERE

3    ALREADY IN THE POSSESSION OF THE UNITED STATES AND WERE TO BE

4    DISTRIBUTED TO THE VARIOUS VICTIMS IN THIS MATTER.

5        IT'S REPRESENTED THAT HE IS NOT VIOLENT.  THAT MAY BE

6    TRUE, BUT WEIGH AGAINST THAT THE LOSS THAT HAS BEEN GENERATED

7    HERE.  AS YOU CONSIDER THE IDEA OF LOSS, CONSIDER THEIR

8    REPRESENTATIONS ABOUT AN INSTITUTIONALIZED VICTIM, THE BANK.

9    BANKS DON'T JUST HAVE MONEY ON THEIR OWN.  EVERY DEPOSIT THAT

10   IS MADE BY THE PEOPLE ON THE STREET, WHETHER IT BE THEIR LIFE

11   SAVINGS, WHETHER IT BE THE CHECKING ACCOUNT THAT RECEIVES

12   THEIR PAYCHECK, WHETHER IT BE SOME SMALL BUSINESS, COMES FROM

13   INDIVIDUALS.  AND THAT WAS PUT AT RISK IN THIS CASE.

14       YOU MAY SAY THAT THE BANK WAS REIMBURSED AND THOSE PEOPLE

15   WERE PROTECTED.  YES.  ONCE AGAIN, PROTECTED BY THE TAXPAYERS

16   OF THIS COUNTRY BECAUSE WE HAVE SOMETHING SINCE THE TIME OF

17   THE DEPRESSION THAT PROVIDES INSURANCE AGAINST THOSE SORTS OF

18   LOSSES.  BUT THAT STILL REPRESENTS TAXPAYER MONEY.  LITTLE

19   PEOPLE WERE INJURED HERE.

20           THE COURT:  PLUS, AS I UNDERSTAND IT, THE BANK HAD

21   TO TAKE QUITE A BIT OF LEGAL ACTION TO LIQUIDATE AND AMASS --

22           MR. DIAMOND:  THAT'S EXACTLY RIGHT.  THAT'S BEFORE

23   WE GET INTO THE PRACTICALITIES OF WHAT IT COSTS SIMPLY TO

24   LIQUIDATE, RATHER THAN SIMPLY RECEIVE PAYMENT AGAINST A LOAN

25   AS REPRESENTED IN THE ORIGINAL LOAN APPLICATION.

1        THE IDEA OF THE CONSEQUENCES TO MR. GEDDES HAS BEEN

2   MENTIONED.  AND IT'S BEEN SAID IN THE PLEADINGS THAT HE HAS TO

3   LIVE WITH THE HORROR OF WHAT HE'S DONE TO THESE PEOPLE.  WELL,

4   LET'S KEEP IN MIND WHY THE UNITED STATES ATTACHED SOME OF

5   THOSE PHOTOS.

6        ONE OF THE FIRST THINGS HE DID UPON THE FIRST

7   DISTRIBUTION OF THE LOAN WAS TO BUY A CAR, A MERCEDES.  THAT

8   WENT UP AND UP AND UP, UNTIL ULTIMATELY HE WAS PAYING AS MUCH

9   AS $500,000 FOR ONE OF THE CARS IN QUESTION.  ALL OF THIS

10  BASED ON A BUSINESS THAT WAS ABSOLUTELY NOTHING.

11       THE FRENCH HAVE A PHRASE FOR IT.  THEY CALL IT BEING A

12  FUMEST (PHONETIC), SOMEONE WHO DEALS IN SMOKE.  THINK ABOUT

13  THAT.  IT MAY BE IDIOMATIC, BUT IT DOESN'T TAKE A ROCKET

14  SCIENTIST TO SEE THE PARALLELS IN THIS SITUATION.

15       THE ISSUE OF THE CONSEQUENCES TO HIM ARE ALSO EMPHASIZED

16  BY THE FACT THAT AT THE TIME THIS CASE WAS TAKEN DOWN IN 2005,

17  HE WAS WITHIN HOURS OF BUYING ONE MORE TOY, A VERY NICE YACHT.

18  HE WAS ON HIS WAY TO THE WEST COAST TO DO THAT.

19       WE GET INTO THE IDEA OF HIS SKILLS.  AND THAT TIES OVER

20  TO THIS IDEA OF RECIDIVISM WHICH HAS BEEN DISCUSSED.  I HAVE

21  READ AND I HAVE REREAD THE PRESENTENCE REPORT IN THIS CASE,

22  AND I SEE ALMOST NOTHING THAT SUGGESTS THAT HE HAS THESE

23  COMPUTER SKILLS IN QUESTION.  INDEED, HE EVEN STATES IN ONE OF

24  HIS PLEADINGS THAT THE EVIDENCE OF THOSE SKILLS COMES FROM THE

25  FACT THAT HE MADE THE PROMISE TO PRODUCE A MILLION DOLLARS AS

1  PART OF INITIAL RESTITUTION.  THAT IS PROOF OF NOTHING.

2  THAT'S ONE OF THE REASONS WHY I THINK THIS IDEA OF FUMEST IS

3  SO IMPORTANT HERE.  HE IS SELLING SMOKE.

4      IF YOU LOOK AT THE SKILLS THAT ARE FOUND WITHIN THE

5  PRESENTENCE REPORT, YOU HAVE A DIFFICULT TIME GETTING BEHIND

6  OR BEYOND THE CRIMINAL HISTORY THAT BEGAN IN 1988, WITH A

7  THIRD DEGREE THEFT BY RECEIVING FOR EMBEZZLEMENT FROM HIS

8  EMPLOYER.  THAT SAME YEAR HE HAD A CLASS-B RETAIL THEFT.  THAT

9  SAME YEAR HE HAD A SECOND DEGREE FORGERY, USING FORGED CHECKS

10 TO BUY STEREO EQUIPMENT FOR A CAR.  AND RIGHT AFTER THAT HE

11 HAD ANOTHER THIRD DEGREE THEFT FROM A VEHICLE.

12     THOSE LAST TWO CASES ARE INTERESTING BECAUSE HE WAS

13 GRANTED THE PRIVILEGE OF PROBATION.  PROBATION WAS LATER

14 REVOKED, AND HE WAS PUT ON PAROLE.  THE PAROLE WAS LATER

15 REVOKED AND HE WAS PUT ON PAROLE AGAIN, AND PAROLE WAS LATER

16 REVOKED.

17     THEN WE GET INTO CLASS-B ATTEMPTS TO UNLAWFULLY USE A

18 TRANSACTION CARD, THIRD DEGREE THEFTS BY DECEPTION.  PAROLE

19 WAS REVOKED.  THIRD DEGREE RECEIPT OR TRANSFER OF A STOLEN

20 VEHICLE.

21     AND THEN I FIND ONE OF THE MOST INTERESTING REFERENCES

22 WHEN WE'RE TALKING ABOUT HIS SKILLS.  WHILE ON WORK RELEASE

23 FROM THE WEBER COUNTY JAIL HE TRIED TO BUY A CAR USING A

24 FRAUDULENT CREDIT APPLICATION.  AND THEN BECAUSE OF THE

25 REVOCATIONS THAT I PREVIOUSLY MENTIONED, HE HAD ONE OTHER

1    CHARGE FOR WHICH HE WAS NEVER CONVICTED BECAUSE IT WAS
2    DISMISSED WHEN HIS PAROLE WAS REVOKED, AND THAT WAS FOR
3    COMMUNICATIONS FRAUD.

4        HIS LAST PAROLE ENDED IN 2000, AND BY 2002 HE'S IN THE
5    MIDDLE OF THIS SCHEME.  WE DON'T HAVE TO GUESS ABOUT WHETHER
6    OR NOT HE IS A RECIDIVIST.  HE WAS A RECIDIVIST BEFORE HE EVER
7    CAME BEFORE THIS COURT ON THIS CHARGE.

8        AND IF YOU THINK THAT I'M SIMPLY BEING HYPERBOLIC HERE,
9    LET'S IGNORE THE CRIMINAL HISTORY.  HE CAME BEFORE THIS COURT
10   ON THIS CHARGE, AND LAST YEAR, WHILE HE WAS YET IN HIS 40'S,
11   HE RECIDIVATED, COMMITTED ANOTHER CRIME BY ABSCONDING.  AND HE
12   STANDS BEFORE THE COURT TO BE SENTENCED ON THAT HERE TODAY.

13       THERE'S NO CONJECTURE HERE, YOUR HONOR.  ALL OF THESE
14   ASSERTIONS ABOUT THE CONSEQUENCES FOR HIM AND HIS SKILLS AND
15   THE HORROR THAT HE HAS TO LIVE WITH STRIKES ME AS BALONEY, AS
16   POPPYCOCK, AS BALDERDASH.  AND IF YOU DON'T LIKE THOSE WORDS,
17   TRY (UNINTELLIGIBLE).  IT IS ALL OF THOSE.

18       WE CAN ONLY PRAY AND HOPE THAT THE SKILLS THAT ARE
19   DISPLAYED IN THE PRESENTENCE REPORT BECOME OBSOLETE.  HAVING
20   SAID ALL OF THAT, YOUR HONOR, WE AS THE UNITED STATES ARE
21   PREPARED TO RECOMMEND A SENTENCE OF 151 MONTHS, WHICH WOULD BE
22   APPROPRIATE IN THIS CASE GIVEN THESE CIRCUMSTANCES.

23       NOW, B.H. IS HERE TODAY, AND HE WOULD LIKE TO MAKE A FEW
24   STATEMENTS, AND I'D LIKE TO GIVE HIM THE PODIUM FOR A FEW
25   MINUTES.

1          THE COURT:  I GENERALLY DON'T ALLOW VICTIMS EXCEPT

2    IN ENUMERATED CASES, BUT IN THIS INSTANCE I -- EXCUSE ME --

3    I AM GOING TO ALLOW B.H. TO SPEAK, PRIMARILY BECAUSE I GATHER

4    HE'S MADE THIS TRIP TWICE.

5          MR. DIAMOND:  HE HAS, YOUR HONOR.

6          THE COURT:  ALL RIGHT.  SO GO AHEAD, SIR, PLEASE.

7    YES, SIR.  AND I HOPE YOU UNDERSTOOD WHEN I WAS EXPLAINING TO

8    THE PARTIES AND COUNSEL WHY I CONTINUED THIS.  I WANTED TO

9    MAKE SURE MR. GEDDES' ATTORNEY COULD DO WHAT HE NEEDED TO DO,

10   AND I HEAR FROM HIM HE MADE GOOD USE OF THAT TIME.  I ALSO

11   WANTED TO MAKE SURE THAT IF EVER THERE WERE AN APPEAL, THAT WE

12   HAVE NOT RAISED AN ISSUE.  BUT I RECOGNIZE THE INCONVENIENCE.

13   BUT YOU GO AHEAD THERE, SIR.

14         MR. B.H.:  YES, YOUR HONOR.  THANK YOU FOR THE

15   OPPORTUNITY TO ADDRESS THE COURT.  THIS HAS BEEN A LONG,

16   PAINFUL PROCESS FOR ALMOST FIVE YEARS.  FRANKLY, I'M LOOKING

17   FORWARD TO PUTTING THIS BEHIND ME.

18       I PREVIOUSLY SUBMITTED TO THE COURT THE VICTIM IMPACT

19   STATEMENT, AND I'D JUST LIKE TO -- JUST TO BRIEFLY JUST HIT

20   THE HIGHLIGHTS OF THOSE AGAIN.  MR. GEDDES EXPLOITED MY

21   CHRISTIAN FAITH.  HE ACTED AND TALKED AS THOUGH HE TOO LIVED

22   HIS LIFE OUT OF THAT FAITH.

23         THE COURT:  YOU PROBABLY HAD NO INKLING OF HIS

24   CRIMINAL HISTORY.

25         MR. B.H.:  I DID NOT.  THAT WASN'T THE CASE.  NUMBER

```
 1   TWO, MR. GEDDES EXPLOITED MY FRIENDSHIP AND MY CONCERNS FOR MY
 2   FAMILY.  MY WIFE WAS GRAVELY ILL DURING THIS WHOLE PERIOD OF
 3   TIME.  HE WAS FULLY AWARE OF WHAT WAS GOING ON, AND HE TOOK
 4   FULL ADVANTAGE OF IT.  MR. GEDDES CAUSED IMMEDIATE AND LASTING
 5   EMOTIONAL TRAUMA TO ME AND MY FAMILY.  WHILE WE'VE GOTTEN
 6   ALONG WITH LIFE, THE PAIN, THE DOUBT AND THE HURT ARE STILL
 7   AROUND.  I'VE ALWAYS BEEN A TRUSTING PERSON, LOOKING FOR THE
 8   BEST IN PEOPLE, BUT WITH THIS EXPERIENCE, THAT HAS BEEN
 9   AFFECTED.
10           THE COURT:  HOW IS YOUR WIFE NOW?
11           MR. B.H.:  SHE'S BETTER, MUCH BETTER, THANK YOU.
12           THE COURT:  GOOD.
13           MR. B.H.:  THANK YOU.  AND SO AM I AS A RESULT OF
14   THAT.  FINALLY, MR. GEDDES HAS CAUSED FINANCIAL STRIFE FOR ME
15   AND MY FAMILY AND OTHERS.  WE'VE MADE SERIOUS ADJUSTMENTS
16   FINANCIALLY.  UNFORTUNATELY, THE ADDITIONAL VICTIMS OF HIS
17   FRAUD HAVE BEEN THE NUMEROUS CHARITIES THAT MY WIFE AND I HAVE
18   SUPPORTED.  WE HAVE STRONG REASON TO BELIEVE THAT THERE ARE
19   ADDITIONAL ASSETS OUT THERE.  THEY'RE JUST NOT FORTHCOMING.
20       AS I READ OVER HIS LETTER TO THE COURT, IT IS CLEAR TO ME
21   HE'S A PSYCHOPATH WITHOUT CONSCIENCE FOR WHAT HE DID.  WHAT HE
22   FOCUSED ON WAS HOW HE'S GOING TO FIX THINGS WITH MONEY, AND
23   THE SELF-CENTERED PAIN HE IS FEELING, HIS DISTRESS THAT HIS
24   WIFE IS LEAVING HIM BECAUSE HE CHOSE NOT TO SHOW UP AT THE
25   PREVIOUS HEARING, NOT FOR THE DAMAGE THAT HE INFLICTED ON HER
```

```
 1   AND OTHERS.  HE IS REMORSEFUL ABOUT NOTHING EXCEPT THE FACT

 2   THAT HE GOT CAUGHT.  YOUR HONOR, IN MY OPINION, ONCE HE GETS

 3   OUT, HE'S GOING TO GO RIGHT BACK TO DOING JUST WHAT HE'S BEEN

 4   DOING.

 5        YOU KNOW, JEFF, WHAT YOU DID TO ME AND TO OTHERS WAS

 6   COMPLETELY REPREHENSIBLE, BUT WHAT YOU DID TO YOUR CHILDREN

 7   WAS UNCONSCIONABLE.  MAY GOD FORGIVE YOU.

 8             THE COURT:  ALL RIGHT.  THANK YOU, SIR.

 9             MR. DIAMOND:  YOUR HONOR, UNLESS THE COURT HAS OTHER

10   QUESTIONS, I BELIEVE WE'RE PREPARED TO SUBMIT IT.

11             THE COURT:  THANK YOU.  NOW I'M GOING TO ALLOW THE

12   ATTORNEYS TO RESPOND.  IF YOU WISH TO RESPOND BEFORE

13   MR. GEDDES, YOU CERTAINLY MAY.

14        MR. DONALDSON, ANYTHING YOU WANT TO SAY, SIR?

15             MR. DONALDSON:  I JUST HAD ONE -- WELL, JUST ONE

16   POINT.  I'LL COME UP.  I APOLOGIZE.

17             THE COURT:  SURE.  IT'S EASIER TO HEAR YOU.

18             MR. DONALDSON:  IN TERMS OF OUR ARGUMENT ABOUT

19   RECIDIVISM AND THE STATISTICS THAT SUPPORT THAT IN THAT 2004

20   SENTENCING COMMISSION STUDY, THOSE STATISTICS APPLY TO SOMEONE

21   WHO IS IN THE CRIMINAL HISTORY CATEGORY THAT HE'S IN.  JUST

22   THE PLAIN FACT IS THAT AGE DOES REDUCE RECIDIVISM.  I

23   APPRECIATE MR. DIAMOND'S ARGUMENT, BUT I THINK THAT THAT IS IN

24   FACT THE CASE.

25        AND ON THIS ISSUE ABOUT CORE CRIMES, I'M THE ONE THAT
```

```
1    WROTE THAT, SO I WANT TO BE CLEAR WHAT I MEANT.  OBVIOUSLY
2    MR. GEDDES LIVED A MUCH DIFFERENT LIFESTYLE WHILE THESE
3    OFFENSES WERE GOING ON.  AND SOMETIMES A PERSON DOESN'T FULLY
4    APPRECIATE THE KIND OF HARM THAT THEY HAVE CAUSED UNTIL THEY
5    GET A LITTLE WAYS AWAY FROM IT AND BEGIN TO FEEL SOME OF THE
6    CONSEQUENCES, WHICH HE'S, YOU KNOW, BEGUN TO SUFFER.  AND
7    CERTAINLY SOME OF THESE WOUNDS ARE SELF-INFLICTED, BUT MY
8    POINT, AND I THINK THE POINT HE WAS TRYING TO MAKE, IS NOT
9    THAT -- YOU KNOW, IT WASN'T THAT -- IT'S WHAT HE DID WAS
10   WRONG.  IT HAS AFFECTED OTHER PEOPLE.  IT'S AFFECTED THE
11   COMMUNITY.  YOU JUST HEARD WHAT B.H. SAID.  OBVIOUSLY IT
12   AFFECTED HIM AND HIS FAMILY.  AND IT ALSO AFFECTED MR. GEDDES'
13   CHILDREN.  THAT'S ALL.
14        THE COURT:  ABSOLUTELY.  THANK YOU, MR. DONALDSON.
15   MR. GAITHER, ANYTHING YOU WISH TO RESPOND, SIR?
16        MR. GAITHER:  I JUST WANTED TO RESPOND THAT THE
17   GOVERNMENT DID GO BACK TO THE SITUATION INVOLVING THE CARS.
18   AND, AGAIN, THE CARS WERE FOR RESALE.  SOME OF THEM WERE BEING
19   SOLD FOR PROFIT.  AND I'D LIKE THE COURT TO LOOK AT THE ENTIRE
20   PICTURE.
21        BUT I BELIEVE MR. GEDDES WOULD LIKE TO MAKE A STATEMENT,
22   SO WE'RE PREPARED TO SUBMIT THAT.
23        THE COURT:  SURE, THANKS.
24        MR. GEDDES, WHY DON'T YOU COME TO THE PODIUM WITH YOUR
25   ATTORNEYS.  IT'S MUCH EASIER TO HEAR YOU, SIR.
```

1      ALL RIGHT.  MR. GEDDES, PLEASE GO AHEAD.  WOULD YOU LIKE

2   A DRINK OF WATER, SIR?

3           THE DEFENDANT:  NO THANK YOU.  I'D LIKE TO -- A LOT

4   OF -- A LOT OF BAD THINGS HAVE BEEN SAID TODAY.  A LOT OF BAD

5   THINGS HAVE HAPPENED.  AND I'D LIKE B.H. TO KNOW THAT -- THAT

6   I'M TRULY SORRY FOR THE THINGS THAT HAVE HAPPENED.  THAT I'VE

7   WAITED FIVE YEARS TO BE ABLE TO SAY SOMETHING TO HIM, AND

8   THERE'S A LOT THAT I'VE WANTED TO SAY.  THIS IS PROBABLY NOT

9   THE PLACE, THE TIME, TO SAY ANYTHING.  I KNOW THAT HE HAS A

10  LOT OF NEGATIVE, HARD FEELINGS.  BUT I KNOW THAT I HAVE HURT

11  HIM AND HURT HIS FAMILY, IN ADDITION TO MY FAMILY.  AND I

12  APOLOGIZE TO ZIONS BANK, TO THE COURT.

13      MR. DIAMOND SAID THAT -- THAT THE F.B.I. TOOK EVERYTHING

14  ON MAY.  I MET WITH ZIONS, AND FROM THE VERY BEGINNING, YOU

15  KNOW, I SIGNED AND I WANTED TO TRY AND DO WHATEVER I COULD TO

16  HELP MINIMIZE THE DAMAGE OF WHAT WAS HAPPENED.

17      I'M JUST -- I'M REALLY SORRY.  I WANT TO MAKE THE

18  SITUATION RIGHT.  NEGATIVE THINGS HAVE BEEN SAID ABOUT MY

19  SKILLS OR WHAT SKILLS THAT I HAVE.  I HOPE THAT YOU LOOK AT

20  THE LETTERS THAT WERE WRITTEN.

21           THE COURT:  I HAVE.

22           THE DEFENDANT:  YOU KNOW, THAT LUKE LIROT ATTORNEY,

23  HE'S SEEN MY SKILLS.  HE'S SEEN TRADE SHOWS THAT I'VE BEEN AT,

24  THE ACCEPTANCE OF MY TECHNOLOGY WITH PEOPLE.  HE'S BEEN AT

25  SALES MEETINGS WHERE THE TECHNOLOGY WAS ACCEPTED.  DUE TO THE

```
 1    CIRCUMSTANCES, DIDN'T GET MOVED IN TIME -- YOU KNOW,
 2    TRANSACTION DIDN'T HAPPEN IN TIME.
 3        I HOPE THAT WITH THE PEOPLE THAT ARE INVOLVED WITH IT
 4    NOW, IT CAN BE DONE.  IT CAN MAKE THINGS FINANCIALLY BETTER.
 5    I KNOW IT'S NOT GOING TO MAKE EMOTIONS, FEELINGS AND ETCETERA
 6    BETTER, BUT AT LEAST THAT MAY BEGIN.
 7        I KNOW THAT I MADE A LOT OF MISTAKES.  IN THIS LAST FIVE
 8    YEARS EVERYTHING WAS TAKEN FROM ME, AND NOT ONCE DID I HAVE A
 9    THOUGHT OF DOING SOMETHING WRONG.  I WORKED HARD.  I WORKED
10    AROUND THE CLOCK.  WORKED WITH THE SKILLS THAT I HAVE,
11    SOFTWARE DEVELOPMENT.  WAS ABLE TO MAKE ENDS MEET.  WASTED A
12    LOT OF MONEY ON LEGAL DEFENSE THAT I WISH WOULD HAVE BEEN ABLE
13    TO BE PAID TOWARDS RESTITUTION INSTEAD.
14            THE COURT:  YOU SPENT A LOT OF MONEY GAMBLING AS I
15    UNDERSTAND IT WHEN YOU RAN AWAY AS WELL, DID YOU NOT?
16            THE DEFENDANT:  I WAS GAMBLING, BUT I DIDN'T LOSE
17    MONEY WHILE I WAS GAMBLING.  I KNOW A LOT OF PEOPLE LOOK AT IT
18    NEGATIVE, GAMBLING, BUT I WAS ACTUALLY POSITIVE.  BUT I
19    JUST -- I MEAN I HAVE A WHOLE LOT OF THINGS I WANT TO SAY, BUT
20    WITH ALL THE THINGS THAT HAVE BEEN SAID TODAY, IT JUST KIND OF
21    SEEMS --
22            THE COURT:  ANYTHING YOU WISH TO SAY THAT YOU
23    BELIEVE IS IMPORTANT YOU WANT TO SAY, YOU GO AHEAD THERE,
24    MR. GEDDES.
25            THE DEFENDANT:  I THINK THE ONLY THING I JUST WANT
```

1    TO SAY IS JUST THAT EVEN THOUGH IT HAS BEEN SAID THAT -- I

2    FORGET HOW -- MY MIND IS NOT WORKING VERY WELL, BUT SOMETHING

3    TO THE EFFECT THAT I'M NOT SORRY FOR CERTAIN THINGS THAT HAVE

4    HAPPENED TO MY FAMILY, CERTAIN THINGS THAT HAVE HAPPENED TO

5    B.H. OR ANYBODY THAT'S INVOLVED.  MAYBE TO SOME PEOPLE IT

6    MIGHT LOOK THAT WAY, BUT WRONG THINGS HAPPENED.

7        I THOUGHT HIGHLY OF BRUCE, AND IT'S ABSOLUTELY DEVASTATED

8    ME WHAT HAS HAPPENED THROUGH THIS SITUATION.  AND I LOVE MY

9    FAMILY, AND IT'S A STRUGGLE JUST TO GO FIVE MINUTES AT A TIME

10   THINKING OF WHAT I'VE DONE TO MY KIDS AND TO MY WIFE.  IT'S

11   NOT THE WAY THAT IT'S BEEN PORTRAYED.

12       IT'S NOT A MATTER OF BEING CAUGHT.  IT'S NOT A MATTER OF

13   ANYTHING.  FROM THE VERY FIRST DAY WHEN I TALKED TO THE F.B.I.

14   AGENTS, I WANTED THIS TO BE OVER.  I WANTED IT TO BE MADE

15   RIGHT.  I WANT IT TO BE RIGHT.

16       AND I DO HAVE ABILITIES.  I HAVE ABILITIES TO MAKE THIS

17   RIGHT FINANCIALLY.  TIME WILL PROVE THAT I'M NOT GOING TO EVER

18   BE IN TROUBLE AGAIN.  BUT I HAVE THE ABILITIES, IF I'M OUT OF

19   INCARCERATION SOONER THAN LATER, THAT I CAN DEVELOP SOFTWARE

20   THAT PAYS BETTER THAN NORMAL WAGES.  AND IN FACT TECHNOLOGY

21   THAT I HAVE I BELIEVE IS GOING TO GENERATE SOME REVENUE THAT

22   CAN PAY A GOOD PORTION, IF NOT ALL, OF THIS RESTITUTION.  I

23   PRAY THAT THAT HAPPENS.  AND I'VE ALWAYS INSTRUCTED THEM

24   THAT'S THE VERY FIRST THING THAT I WANT TO HAVE DONE.  FROM

25   THE BEGINNING THAT'S WHAT I'VE ALWAYS WANTED.  I WANTED THIS

1  DEBT TO BE SATISFIED SOONER THAN LATER.

2       AND ALL THESE YEARS IN DEALING WITH THIS, IT'S BEEN

3  STRESSFUL.  IT'S BEEN DIFFICULT TO FUNCTION.  I DID THE BEST

4  THAT I COULD.  I WISH THAT THINGS COULD HAVE HAPPENED QUICKER.

5  I WISH THAT FOR -- I COULD HAVE HAD THE RESTITUTION PAID OFF

6  AND/OR ASSISTED AND MAXIMIZED THE RESALE OF ASSETS AND GOT THE

7  MOST AND HAD THE DEBT ELIMINATED.  BUT IT IS WHAT IT IS.

8       AND I JUST HOPE THAT I CAN BE RELEASED AT A TIME TO WHERE

9  I HAVE TIME TO EARN THE MONEY, MAKE RESTITUTION, MAKE PAYMENT.

10 I HOPE THAT I CAN BE RELEASED AT A TIME TO WHERE HOPEFULLY I

11 CAN SEE AND BE INVOLVED IN SOME OF MY CHILDREN'S YOUTH.  AND I

12 HOPE THAT I'M GIVEN THAT CHANCE.

13      I KNOW THAT JUSTICE IS CRITICAL, AND I KNOW THAT THERE

14 SHOULD BE AN ADEQUATE SENTENCE, BUT I'M HOPING THAT SOME OTHER

15 THINGS ARE CONSIDERED.  AND I KNOW I HAVE A LOT OF PROBATION

16 TO DO.  I HOPE THAT I CAN TAKE ADVANTAGE AND KEEP MY

17 TECHNOLOGY SKILLS AS SHARP AS POSSIBLE, RETURN, MAKE

18 RESTITUTION.  AND I WILL NEVER BE IN FRONT OF THIS COURT

19 AGAIN.

20           THE COURT:  ALL RIGHT.  IS THAT ALL YOU WISH TO TELL

21 ME, SIR?

22           THE DEFENDANT:  YEAH.

23           THE COURT:  ALL RIGHT, THANK YOU.

24      IS THERE ANY REASON THAT SENTENCE SHOULD NOT BE IMPOSED?

25           MR. DONALDSON:  I KNOW OF NONE.

1        MR. GAITHER:  NO.

2        THE COURT:  I'VE VERY CAREFULLY CONSIDERED NOT ONLY

3   THE MATERIALS THAT WERE SUBMITTED TO ME, THE REPORTS AND THE

4   MEMORANDA AND THE LETTERS, BUT WHAT I HEARD TODAY.  AND BASED

5   ON THAT, I FIND THAT A REASONABLE SENTENCE, AND I WILL EXPLAIN

6   THE REASONS IN A MOMENT, IS A SENTENCE OF 188 MONTHS

7   INCARCERATION.

8        AND I DO THIS LOOKING NOT ONLY AT THE GUIDELINE RANGE,

9   WHICH IS THE BEGINNING POINT, BUT AT THE FACTORS UNDER 3553.

10  AND STARTING WITH THE NATURE AND CIRCUMSTANCES OF THE OFFENSE,

11  AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT, WHAT

12  I AM STRUCK BY, AND WHAT I WAS STRUCK BY FROM THE FIRST TIME I

13  READ ABOUT THIS CASE, WAS THE ELABORATE AND COMPLEX NATURE OF

14  THE SCHEME THAT MR. GEDDES SET UP.

15       I DO BELIEVE, MR. GEDDES, YOU ARE VERY SMART.  YOU ARE

16  VERY TALENTED.  I MEAN THAT IS CLEAR.  FOR YOU TO SET UP THE

17  SCHEME, WHICH LASTED ALMOST THREE YEARS, USING BANK ACCOUNTS

18  WHICH WERE PART OF A FRAUD, SETTING UP A WHOLE FAMILY OF

19  BUSINESSES, THE ADAGIO BUSINESSES, DUPING ZIONS BANK, DUPING

20  YOUR VICTIM, IT SHOWS, ALTHOUGH CERTAINLY THIS WAS NOT A PONZI

21  SCHEME, BUT IT WAS A VERY COMPLEX, SOPHISTICATED PLAN.  AND AS

22  MR. DIAMOND SAID, THERE WAS NOTHING BEHIND IT.  I HAVE

23  CONSIDERED THAT.

24       I ALSO LOOKED AT THE HISTORY AND CHARACTERISTICS OF

25  MR. GEDDES.  AND I WAS STRUCK BY THE LONG HISTORY OF FRAUD AND

1    FORGERY AND USE OF MR. GEDDES' OBVIOUS INTELLIGENCE AND SKILLS

2    FOR ILLEGAL PURPOSES.

3         THEN WHEN I THINK ABOUT WHAT HAPPENED THE DAY OF

4    SENTENCING, THE DAY OF -- THAT SENTENCE WAS TO BE IMPOSED, AND

5    MR. GEDDES THROUGH HIS ATTORNEYS HAD WORKED OUT A VERY

6    BENEFICIAL AGREEMENT, 10 YEARS, WHICH SOUNDS LIKE A LONG TIME,

7    BUT GIVEN THE MAGNITUDE OF THE LOSS AND WHAT HE WAS FACING

8    UNDER THE GUIDELINES WAS SUCH A GOOD DEAL, AND THEN MR. GEDDES

9    LEFT.

10        AND HIS LEAVING WAS NOT JUST LEAVING, BUT THEN HE

11   PROCEEDED TO EVADE A RATHER THOROUGH INVESTIGATION WITH LOTS

12   OF MARSHALS AND POLICE FORCES, AND THERE WAS A LOT OF MONEY

13   AND TIME SPENT ON APPREHENDING MR. GEDDES.  AND CONTRARY TO

14   WHAT I HEAR HIM SAYING, THE ONLY INFORMATION I HAVE ABOUT HIS

15   FLEEING WAS THAT THE TIPS THAT LAW ENFORCEMENT WOULD GET CAME

16   FROM VARIOUS CASINOS WHERE MR. GEDDES WAS WAGERING LARGE

17   AMOUNTS.  AND TO ME THAT IS VERY TELLING ABOUT MR. GEDDES.

18        I HOPE YOU HAVE REMORSE, BUT I HAVE TO TELL YOU THAT I AM

19   SOMEWHAT DOUBTFUL.

20        AND I THINK THAT I NEED TO DETER NOT ONLY YOUR BEHAVIOR

21   BUT OTHERS WHO MIGHT HAVE THE SAME TYPE OF GIFTS YOU DO FROM

22   USING THEM THE WAY THAT YOU HAVE.  AND I THINK THAT FRANKLY

23   THE PUBLIC NEEDS TO BE PROTECTED FROM ANY FURTHER ACTIVITIES

24   THAT YOU MIGHT ENGAGE IN.

25        I RECOGNIZE THAT WHILE YOU ARE INCARCERATED YOUR ABILITY

1    TO PAY RESTITUTION IS ALMOST NIL.  BUT DESPITE WHAT YOU TELL

2    ME, MR. GEDDES, AND BASED ON MY LONG EXPERIENCE IN DEALING

3    WITH PEOPLE WHO OWE AMOUNTS OF RESTITUTION, I THINK EVEN IF

4    YOU WERE RELEASED ON PROBATION, ANY RESTITUTION YOU WOULD PAY

5    WOULD BE MINIMAL.  AND, FRANKLY, I WOULD WONDER WHAT KIND OF

6    ACTIVITIES YOU WOULD ENGAGE IN TO OBTAIN THAT RESTITUTION.

7         AND IT IS FOR THOSE REASONS THAT I IMPOSE A SENTENCE OF

8    188 MONTHS.

9         SPECIFICALLY FOR THE EARLIER CASE, 06-CR-0726, IT'S 162

10   MONTHS, TO BE FOLLOWED BY A CONSECUTIVE SENTENCE OF 26 MONTHS

11   IN THE OLDER CASE.

12        UPON RELEASE FROM CONFINEMENT, SIR, YOU'RE PLACED ON

13   SUPERVISION FOR 60 MONTHS.  WITHIN 72 HOURS OF RELEASE FROM

14   THE CUSTODY OF THE BUREAU OF PRISONS, MR. GEDDES, YOU MUST

15   REPORT IN PERSON TO THE PROBATION OFFICE WHERE YOU'RE

16   RELEASED.  I DON'T SEE IN ALL YOUR HISTORY ANY USE OF

17   SUBSTANCE ABUSE.

18        IS THE GOVERNMENT IN AGREEMENT?  DO YOU HAVE ANY EVIDENCE

19   OF THAT?

20             MR. DAYNES:  WE HAVE NO EVIDENCE OF THAT.

21             THE COURT:  SO I'M GOING TO SUSPEND THE DRUG TESTING

22   REQUIREMENT BECAUSE THAT'S NOT SOMETHING THAT IS AN ISSUE

23   HERE.  HOWEVER, IT IS FEDERAL LAW AND I DO ORDER THAT YOU GIVE

24   A D.N.A. SAMPLE.

25        REMEMBER, DO NOT COMMIT ANY CRIMES.  AND YOU ARE A

 1    CONVICTED FELON, MR. GEDDES.  YOU CANNOT POSSESS A FIREARM OR

 2    OTHER DANGEROUS DEVICE.

 3         IN ADDITION, YOU MUST COMPLY WITH THE STANDARD CONDITIONS

 4    OF SUPERVISION, AND THESE FOLLOWING SPECIAL CONDITIONS.  THEY

 5    ARE THIS:  FIRST, YOU WILL REFRAIN FROM INCURRING NEW CREDIT

 6    CHARGES OR OPENING ADDITIONAL LINES OF CREDIT, UNLESS YOU

 7    RECEIVE THE PRIOR APPROVAL OF THE PROBATION OFFICE.  AND THAT

 8    WILL DEPEND ON WHETHER YOU ARE MEETING YOUR RESTITUTION

 9    OBLIGATIONS.

10         GIVE THE PROBATION OFFICE ALL THE FINANCIAL INFORMATION

11    THEY REQUEST.  AS FAR AS FOLLOWING OCCUPATIONAL RESTRICTIONS,

12    YOU CANNOT PARTICIPATE IN ANY MANNER IN THE AFFAIRS OF ANY

13    FEDERALLY REGULATED FINANCIAL INSTITUTION.  IN ANY EMPLOYMENT

14    YOU WILL NOT HAVE DIRECT OR INDIRECT CONTROL OVER THE ASSETS

15    OR FUNDS OF OTHERS.

16         YOU CANNOT BE SELF-EMPLOYED.  ANY EMPLOYER WITH WHOM YOU

17    ARE SEEKING EMPLOYMENT, YOU MUST INFORM THE EMPLOYER OF THE

18    SUPERVISION STATUS AND THE CRIMES, AND YOU MUST NOTIFY YOUR

19    PROBATION OFFICE OF YOUR EMPLOYER.

20         REMEMBER, SIR, YOU ARE SUBJECT TO A SEARCH OF YOUR

21    PERSON, RESIDENCE, OFFICE OR VEHICLE, CONDUCTED BY THE

22    PROBATION OFFICE AT A REASONABLE TIME, IN A REASONABLE MANNER,

23    BASED UPON REASONABLE SUSPICION OF CONTRABAND.

24         I DON'T THINK, IN VIEW OF YOUR RESTITUTION OBLIGATIONS

25    AND YOUR SPECIAL ASSESSMENT, YOU HAVE THE ABILITY TO PAY A

1   FINE, AND I'M NOT GOING TO IMPOSE ONE.  BUT THERE IS

2   RESTITUTION OF $7,171,033.25 DUE IMMEDIATELY, BUT WITH REGULAR

3   PAYMENTS TO BEGIN PURSUANT TO A SCHEDULE ESTABLISHED BY THE

4   BUREAU OF PRISONS INMATE FINANCIAL RESPONSIBILITY PROGRAM

5   WHILE YOU ARE INCARCERATED.

6        AND UPON RELEASE FROM IMPRISONMENT, THE PAYMENTS WILL BE

7   MADE PURSUANT TO A SCHEDULE ESTABLISHED BY THE PROBATION

8   OFFICE, BUT NO LESS THAN $200 PER MONTH.

9        THE AMOUNTS OF THE RESTITUTION TO B.H., THE NAME IS IN

10  THE PRESENTENCE REPORT, $7,135,632.33; ZIONS BANK, $35,400.92.

11  ALSO, I'M GOING TO GRANT THE MOTION AND THE FORFEITURE OF --

12  IT SAYS THE MONEY JUDGMENT OF $7,117,871.33.  I DON'T

13  UNDERSTAND HOW THAT WORKS.  WHAT IS THAT?  HOW DO YOU FORFEIT

14  A MONEY JUDGMENT?

15        MR. CASTLE:  YOUR HONOR, WITH RESPECT TO FORFEITURE,

16  WHAT WE'RE ASKING IS THAT YOU INCLUDE THAT AS PART OF THE

17  FORFEITURE.  THAT'S A JUDGMENT THAT WE HAVE OR ARE SEEKING

18  AGAINST MR. GEDDES SO THAT IN THE EVENT WE FIND OTHER ASSETS,

19  WE CAN THEN USE THOSE ASSETS AS SUBSTITUTE ASSETS TO SATISFY

20  THE FORFEITURE JUDGMENT.  IT GIVES US THE ABILITY TO CONTINUE

21  TO LOOK FOR ASSETS THAT WE CAN FORFEIT THAT ARE A PRODUCT OF

22  THIS CRIME, AND THEN WITH THE IDEA OF PETITIONING THE ATTORNEY

23  GENERAL TO PAY THE RESTITUTION.

24        THE COURT:  ALL RIGHT.  I REALLY DON'T KNOW HOW THE

25  INTRICACIES OF THAT WORK.

1          MR. GAITHER:  YOUR HONOR, AS I UNDERSTOOD, THERE WAS

2    A JUDGMENT ENTERED IN JANUARY, AND THAT WAS NEVER SET ASIDE OR

3    VACATED.  THERE IS NO PENDING MOTION TO SUPPLEMENT OR ADD TO

4    THAT JUDGMENT.

5          THE COURT:  I THINK IT'S THE SAME ONE.

6          MR. CASTLE:  RIGHT.  BUT IT HAS TO BE --

7          THE COURT:  NOW IT HAS TO BE FINAL.

8          MR. CASTLE:  -- ANNOUNCED BY THE COURT AND ENTERED

9    INTO THE JUDGMENT AND COMMITMENT.

10          THE COURT:  RIGHT.  AND I THINK THAT'S EXACTLY WHAT

11    IT IS.  AND, MR. GAITHER, I THINK THIS IS JUST A FORMALITY.  I

12    DID AN INITIAL ORDER ONCE SENTENCE IS PRONOUNCED.

13      WHAT I THINK YOU'RE TELLING ME, MR. CASTLE, IS I MUST SAY

14    THAT AS PART OF THE SENTENCE.  AND TO THE EXTENT THAT THAT IS

15    ONE OF THE NECESSARY THINGS, I DO THAT.

16      THERE'S ALSO DUE IMMEDIATELY A SPECIAL ASSESSMENT OF

17    $5,700.  THAT'S THE $100 PER COUNT.

18      MR. GEDDES, I DO NOT RECALL WHAT YOUR APPEAL RIGHTS ARE,

19    WHAT YOU GAVE UP, WHAT YOU DIDN'T.  I JUST DON'T REMEMBER

20    THAT.  BUT I DO KNOW THAT IF YOU'RE GOING TO FILE A NOTICE OF

21    APPEAL, YOU'VE GOT TO DO IT WITHIN TEN DAYS OF JUDGMENT BEING

22    ENTERED IN YOUR CASE, WHICH KNOWING THE EFFICIENCY OF

23    MS. MCNAMEE, WILL UNDOUBTEDLY BE TODAY, SO THE CLOCK WILL

24    START TICKING.

25      IF YOU CAN'T PAY THE COST OF AN APPEAL, YOU MAY APPLY FOR

1  LEAVE TO APPEAL IN FORMA PAUPERIS.  AND WERE YOU TO REQUEST,

2  THE CLERK OF THE COURT WOULD PREPARE AND FILE A NOTICE OF

3  APPEAL ON YOUR BEHALF.

4      I RECOMMEND THAT MR. GEDDES BE INCARCERATED IN EITHER,

5  FIRST, TERMINAL ISLAND, SECOND, SAFFORD, OR THIRD, SHERIDAN.

6      NOW, COUNSEL, HAVE I DONE EVERYTHING THAT I -- COVERED

7  EVERYTHING I NEED TO COVER?

8          MR. DONALDSON:  I THINK YOU'VE COVERED EVERYTHING.

9  I DID HAVE ONE REQUEST.

10          THE COURT:  YES, SIR.

11          MR. DONALDSON:  AND IT'S THIS.  I BELIEVE THAT THE

12  RESTITUTION ORDER CAN EITHER BEAR INTEREST, IT CAN --

13          THE COURT:  NO INTEREST.

14          MR. DONALDSON:  OKAY.

15          THE COURT:  NO INTEREST.  AND I RECOGNIZE THAT.  I

16  MEAN TO BE HONEST, I THINK -- I THINK IF THE PRINCIPAL IS PAID

17  DOWN, PEOPLE WILL BE LUCKY, AND SO NO.

18          MR. CASTLE:  YOUR HONOR, ONE OTHER THING, AND THAT

19  HAD TO DO WITH THE ANKLE MONITOR.

20          THE COURT:  OH, YEAH, THERE WAS A COST FOR THE ANKLE

21  MONITOR THAT WAS CUT OFF.

22          MR. CASTLE:  AND THE AMOUNT IS $1,340.  SO WE WOULD

23  ASK THAT THAT AMOUNT BE ADDED TO THE RESTITUTION FIGURE.

24          THE COURT:  ANY OBJECTION TO THAT?  THAT'S THE COST

25  OF THE ANKLE MONITOR.  HOW MUCH WAS THAT AGAIN?

1          MR. CASTLE:  $1,340.

2          MR. GAITHER:  NO OBJECTION.

3          THE COURT:  OKAY.

4          MR. CASTLE:  I BELIEVE, YOUR HONOR, THE VICTIM IN

5    THAT CASE WOULD BE THE UNITED STATES PROBATION OFFICE.

6          THE COURT:  YES.  MS. WHITE, AS REPRESENTATIVE OF

7    THE OFFICE, YES.

8          THE PROBATION OFFICER:  YES, YOUR HONOR.  AND I

9    WOULD ALSO SUGGEST, BASED ON THE REPRESENTATIONS TODAY, MAYBE

10   YOU WOULD CONSIDER A SPECIAL CONDITION TO REDUCE OR LIMIT

11   ACCESS TO COMPUTERS BY THIS YOUNG MAN WHILE HE'S INCARCERATED

12   AND ON SUPERVISION.

13         THE COURT:  I DON'T KNOW.  WHAT DO YOU THINK?  I

14   MEAN I RECOGNIZE -- I RECOGNIZE MR. GEDDES -- I DON'T KNOW

15   THAT THAT'S REALLY IN THE BEST INTEREST OF THE VICTIMS OF HIS

16   CRIME.  I HAVE CONFIDENCE IN THE PROBATION OFFICE THAT YOU

17   WILL MONITOR, AND CERTAINLY BUREAU OF PRISONS, WILL MONITOR

18   HIS USE OF THE COMPUTER.  IF IN FACT YOU BELIEVE THAT IT'S

19   BEING DONE IN A WAY THAT IS NOT BENEFICIAL, YOU CERTAINLY CAN

20   APPROACH ME WITH THAT.  BUT FOR NOW I'M NOT GOING TO IMPOSE

21   THAT.

22      ANYTHING ELSE?

23         MR. DONALDSON:  NO, YOUR HONOR.

24         THE COURT:  MR. GAITHER, ANYTHING ELSE?

25         MR. GAITHER:  NOTHING ELSE.

1          THE COURT:  UNITED STATES?

2          MR. DIAMOND:  NO, YOUR HONOR.

3          THE COURT:  ALL RIGHT.  WE'LL BE IN RECESS.

4              (HEARING CONCLUDED AT 12:05 P.M.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5                       CERTIFICATE OF REPORTER

6       I, RAYMOND P. FENLON, OFFICIAL COURT REPORTER FOR THE

7   UNITED STATES DISTRICT COURT, DISTRICT OF UTAH, DO HEREBY

8   CERTIFY THAT I REPORTED IN MY OFFICIAL CAPACITY, THE

9   PROCEEDINGS HAD UPON THE HEARING IN THE CASE OF GEDDES VS.

10  GEDDES, CASE NO. 2:06-CR-726, IN SAID COURT, ON THE 14TH DAY

11  OF JANUARY, 2010.

12      I FURTHER CERTIFY THAT THE FOREGOING PAGES CONSTITUTE

13  THE OFFICIAL TRANSCRIPT OF SAID PROCEEDINGS AS TAKEN FROM MY

14  MACHINE SHORTHAND NOTES.

15      IN WITNESS WHEREOF, I HAVE HERETO SUBSCRIBED MY NAME

16  THIS 22ND DAY OF MARCH, 2010.

17

18

19                              /S/ RAYMOND P. FENLON

20

21

22

23

24

25